Defendants' assignments of error are based primarily upon the Deputy Commissioner's assessment of the credibility of plaintiff and plaintiff's testimony. Although no specific findings regarding the credibility of witnesses were made, it is clear from the findings and conclusions of the Deputy Commissioner that she believed the plaintiff. When reviewing the credibility determinations of a Deputy Commissioner N.C. Gen. Stat. § 97-85
empowers the full Commission, after application, to review an award of a deputy commissioner and "if good ground be shown therefor, [to] reconsider the evidence, receive further evidence, rehear the parties or their representatives, and, if proper, amend the award."
Ordinarily, the Full Commission is the sole judge of the credibility of witnesses. See Watkins v. City of Asheville,99 N.C. App. 302, 303, 392 S.E.2d 754, 756, disc. rev. denied,327 N.C. 488, 397 S.E.2d 238 (1990). However, in cases where the Full Commission does not conduct a hearing and reviews a cold record, North Carolina has recognized the general rule that "the hearing officer is the best judge of the credibility of witnesses because he is a firsthand observer of witnesses whose testimony he must weigh and accept or reject." Pollard v. Krispy Waffle,63 N.C. App. 354, 357, 304 S.E.2d 762, 764 (1983), and Sanders v. BroyhillFurniture Industries, 124 N.C. App. 637, 478 S.E.2d 223 (1996),disc. review denied, 346 N.C. 180, 486 S.E.2d 208 (1997).
Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or to rehear the parties or their representatives, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner with minor modifications as follows:
The Full Commission finds as facts and concludes as a matter of law the following which were entered into by the parties at the hearing before the deputy commissioner and in a Pre-Trial Agreement dated November 12, 1996, as
 STIPULATIONS
1. All parties hereto are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Plaintiff was at all times relevant hereto an employee of defendant-employer U.S. Air, Inc.
3. On November 7, 1995, defendant U.S. Air was self-insured, with its claims administered by Alexsis.
4. The alleged date of plaintiff's injury by accident is November 7, 1995.
5. The parties stipulate to admission of the ten pages entitled "Proceedings before the Industrial Commission."
6. The parties request the Commission to determine plaintiff's average weekly wages based on the Industrial Commission Form 22.
 ************* RULINGS ON EVIDENTIARY MATTERS
The objections contained within the depositions of Dr. David L. Kelly, Dr. Sofia Barbosa, Dr. Joseph Bernstein, Susan Williams, Sheri Decker and Lori Frazier are OVERRULED.
 *************
Based upon the competent evidence of record herein, the Full Commission adopts the Findings of Fact of the deputy commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was 44 years of age. She was graduated from high school, received a patient care technician certificate from Forsyth Technical Institute, and has a realtor's license. She has had a continuous 24-year work history beginning in 1972.
2. In 1985, plaintiff began her employment at Piedmont Airlines (U.S. Air's predecessor) as a flight attendant, with her primary duties being directed toward in-cabin passenger services and safety. She worked in a variable environment of negative G-loads and air turbulence, and was required to stand four to eight hours at a time. Stooping, twisting, pulling and pushing cabin equipment might also be required for up to eight hours at a time with lifting of items weighing approximately 40 pounds from floor level to over-head. Plaintiff carried and placed passenger bags, and she was required to secure and unsecure main and rear cabin doors which weigh between 91 and 126 pounds. She pushed and pulled beverage carts weighing between 153 and 250 pounds when fully set up; she lifted beverage kits which weigh between 17 and 25 pounds from floor level to waist high.
3. Plaintiff performed all of those duties without difficulty and was in good health until November 26, 1990. On that date, while at work for U.S. Air, she accidentally fell down concrete stairs outside the crew lounge at the airport. The fall resulted in injuries to her lower back and right leg; including bulging discs at the L4-5 and L3-4 levels of her spine. She was treated for her injuries and pain by Dr. David L. Kelly, Jr., a neurosurgeon, during the one and one-half year period between December 31, 1990 and June 18, 1992.
4. Plaintiff filed an Industrial Commission Form 18 Employee Notice of Accident reporting the November 26, 1990 back injury which was received by the Commission. The defendant-employer and plaintiff eventually entered into an Industrial Commission Form 21 Agreement, however, said agreement was never approved by the Industrial Commission.
5. Plaintiff became unable to work for the defendant-employer starting December 7, 1990. She made several return-to-work efforts at U.S. Air in 1991 and 1992. Dr. Kelly prescribed conservative care which consisted of rest, pain medication, physical therapy, and work hardening. By April 7, 1992, plaintiff's back and right leg pain had improved to the point where she was able to return to her pre-injury duties as a flight attendant for the defendant-employer. By June 1992 plaintiff was having very little pain, and she was working full time and was "doing great". Dr. Kelly then released plaintiff from his medical care.
6. In the three-year period 1992 through November 6, 1995, plaintiff did not miss work or seek treatment from any physician for back pain. At some points, she did experience some mild back pain for which she took over-the-counter pain relievers. U.S. Air monitors flight attendant performance by "ghost riders" who randomly observe the flight attendants and then prepare "check ride" reports evaluating their work performance. Plaintiff received favorable check ride reports in July of 1994 and on October 23, 1995.
7. On November 7, 1995 plaintiff had just returned to Charlotte, North Carolina at the end of a four day airline trip. At the conclusion of the flight, plaintiff reached up into the overhead luggage compartment to pull her luggage forward, but the luggage would not come further than the rim of the compartment because it was stuck on something, which was unusual. Plaintiff sustained an injury by accident arising out of and in the course of her employment or an injury resulting from a specific traumatic incident of the work assigned when she jerked her luggage upward to get it loose, resulting in immediate pain in her low back. As soon as the bag cleared the luggage bin, plaintiff also felt back pain which radiated into her right hip and which caused her to drop the bag.
8. After resting a few moments, plaintiff walked to her car and drove home to Winston-Salem, using her left foot to operate the car's accelerator due to pain in her right leg. Once she reached home, she put ice on her back and went to bed, where she remained for the next several days due to back pain. Plaintiff became unable to work beginning November 8, 1995 due to lower back and right leg pain from her November 7, 1995 injury by accident.
9. Plaintiff was still unable to work due to low back pain through November 18, 1995, when she was next scheduled to make an airline trip. She initially did not want to report her November 7, 1995 injury to U.S. Air as a worker's compensation injury because she was not able to drive to Charlotte to see Dr. Joseph Bernstein, whom U.S. Air required all worker's compensation claimants to see, and because she felt she would eventually get better with rest.
10. Plaintiff first sought medical treatment for her November 7, 1995 back injury on November 20, 1995 when she was seen by Dr. Sofia I. Barbosa. On this office visit, plaintiff described her most recent injury as being the result of a bag slide on the aircraft. On November 20, 1995, Dr. Barbosa excused plaintiff from work and referred her to Dr. David Kelly.
11. On November 28, 1995 plaintiff spoke with her supervisor Lori Frazier about being unable to work, about seeing her physician, and about being referred to Dr. Kelly. Ms. Frazier transferred plaintiff to U.S. Air worker's compensation representative Sheri Decker to whom plaintiff orally reported injuring her lower back and right hip while removing her luggage from the aircraft on November 7, 1995 and not being able to work since then due to back pain. Sheri Decker treated plaintiff's oral report of injury as a report of a recurrence of a prior injury which required a different method of processing. Considering plaintiff's medical condition, and work schedule, plaintiff had a reasonable excuse for not reporting her injury until November 28, 1995. Plaintiff also had reasonable excuse based upon the delay in her receipt of written forms for which to report her injury after requesting them from her employer. Her employer was not prejudiced as a result of plaintiff's failure to give written notice of injury in 30 days. Ms. Decker referred plaintiff to Dr. Bernstein at Workwell in Charlotte in accordance with U.S. Air's policy, and scheduled an appointment for December 4, 1995.
12. On December 1, 1995, Dr. Kelly saw plaintiff as an emergency work-in. At this time plaintiff was in a lot of pain in her back and right hip. Dr. Kelly took plaintiff out of work and prescribed physical therapy. Dr. Kelly did not take a history from plaintiff on that occasion.
13. On December 6, 1995, plaintiff was evaluated by Dr. Bernstein in Charlotte. At this time, plaintiff was experiencing tingling and tenderness in her feet and pain in her mid to lower lumbar region. Dr. Bernstein prescribed an X-ray, a corset and medication, and he took her out of work. Dr. Bernstein next prescribed a lumbar MRI which was performed January 2, 1996. The results showed bulging discs at L3-L4 and L4-L5 levels of plaintiff's spine.
14. On December 20, 1995, after finally receiving a package from Ms. Decker, plaintiff completed and returned several forms to U.S. Air, including a report of injury form on which plaintiff described her injuries of November 7, 1995.
15. On January 10, 1996, plaintiff was evaluated by physical therapist Sharon Prybylo who in her initial report noted that plaintiff injured herself at work in November 1995. Plaintiff continued physical therapy treatment consisting primarily of aquatic exercise and therapeutic modalities. Throughout her course of treatment, plaintiff had no significant decrease in her pain levels and was ultimately discharged on February 19, 1996 due to her Worker's Compensation claim being denied and insurance limitations.
16. On February 7, 1996, the defendant-employer referred plaintiff for a one-time examination by Dr. David N. DuPuy, an orthopedist, who noted that plaintiff's most recent injury was in November of 1995 when she was pulling her own bag out of the overhead and felt pain in her back. Dr. DuPuy diagnosed plaintiff with chronic low back pain and opined that plaintiff had reached maximum medical improvement and had no evidence of any permanent partial impairment of her lumbar spine due to any specific injury.
17. On February 23, 1996, plaintiff returned to Dr. David Kelly, who ordered an MRI of plaintiff's lumbar spine. The results of the MRI performed March 5, 1996 revealed a diffuse disc bulge at L3-4 and L4-5, but Dr. Kelly did not recommend surgery to treat the condition. Dr. Kelly opined that plaintiff's lifting of her luggage from the overhead storage rack on November 7, 1995 was a significant causal factor in her back injury and resulting disablement from work beginning November 8, 1995. Dr. Kelly has continued to treat plaintiff for her severe lower back and right leg pain, and on July 1, 1996 he opined that plaintiff is not able to return to work until further notice. As of October 29, 1996, Dr. Kelly felt that plaintiff had reached maximum medical improvement from a neurosurgical standpoint.
18. Considering the length of time plaintiff has treated with Dr. David Kelly and his familiarity with her back condition, the Full Commission gives greater weight to his medical opinions regarding causation of plaintiff's back and leg pain and the extent of her disability.
 *************
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On November 7, 1995, plaintiff sustained an injury by accident to her back and right leg which arose out of and in the course of her employment with defendant-employer, and which was a direct result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
2. As a direct and proximate result of plaintiff's work-related injury by accident on November 7, 1995, plaintiff sustained an injury to her back and right leg, and is entitled to temporary total disability compensation from November 8, 1995 through the date of hearing before the Deputy Commissioner and continuing until further order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff had a reasonable excuse for not giving written notice of her injury to her defendant-employer within thirty (30) days of said injury, and the defendants were not thereby prejudiced. Defendants had oral notice of plaintiff's workers' compensation claim within 30 days of the injury. N.C. Gen. Stat. § 97-22.
4. Plaintiff's average weekly wage was sufficient to yield the 1995 maximum compensation rate of $478.00 per week. N.C. Gen. Stat. § 97-2(5).
5. Plaintiff has reached maximum medical improvement as a result of her compensable injury, however, she has been unable to return to work with defendant-employer or in any other type of work for which plaintiff is vocationally suited. N.C. Gen. Stat. § 97-29.
6. As a result of her injury, plaintiff is entitled to medical treatment to be provided by the defendants, including any surgical, hospital, nursing services, medicines, sick travel, and other treatment, including medical and surgical supplies as may be reasonably required to effect a cure or give relief. N.C. Gen. Stat. § 97-25.
7. As a result of her compensable injury on November 7, 1995, plaintiff is entitled to receive vocational rehabilitation services to assist plaintiff in returning to productive employment, when plaintiff is released by her treating physician to return to work. N.C. Gen. Stat. § 97-25.
8. From and after November 7, 1995, plaintiff was and remains incapable because of her work-related back injury which she sustained and the resultant pain, to earn wages which she was receiving at the time of her injury at the same or any other employment. N.C. Gen. Stat. § 97-29.
 *************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For her continuing temporary total disability compensation, defendants shall pay plaintiff at the rate of $478.00 per week from and after November 8, 1995 and continuing thereafter at the same rate, through the date of the hearing and until further Order of the Industrial Commission. Amounts which have accrued shall be paid to plaintiff in a lump sum, subject to a reasonable attorney fee, approved in Paragraph 2.
2. A reasonable attorney fee in the amount of twenty-five percent of the compensation due plaintiff under Paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent of the compensation due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be deducted from the sum due plaintiff and paid directly to plaintiff's counsel.
3. To the extent that the same is reasonably designed to effect a cure, give relief or lessen the period of disability, defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury, including continued medical care provided by Dr. David Kelly, and any surgical services deemed necessary to relieve plaintiff's continuing back pain from her compensable injury. Payment shall be made when bills for the same shall have been submitted on proper forms, through defendant-carrier to the Industrial Commission for approval.
4. Defendants shall provide and plaintiff shall accept vocational rehabilitation services to assist plaintiff in returning to productive employment when plaintiff is released by her treating physician to return to work.
5. Defendants shall bear the costs.
 S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ________________ J. HOWARD BUNN, Jr. CHAIRMAN
S/ ______________ LAURA K. MAVRETIC COMMISSIONER